INTERNATIONAL CONTRACTING CO. v. WALSH et al.

(District Court, E. D. New York. May 12, 1902.)

**1. SHIPPING—HIRING OF SCOWS—LIABILITY OF HIRER FOR INJURY.**

An injury to scows, resulting from their going adrift by reason of the parting of their lines while being towed in from the dumping grounds, in the absence of proof of negligent handling of the tow, or that the sea was in such condition as to render it negligence in the hirer to attempt their navigation, was presumably due to their not being equipped by the owner with suitable lines; and to charge the hirer with liability therefor the burden rests upon the owner to show clearly that the risk of injury from such cause was assumed by the hirer.

**2. SAME.**

A hirer of scows which went adrift by reason of the insufficiency of the lines with which they were equipped by the owner, if negligent in failing to make an effort to recover the vessels, or to promptly notify the owner of their loss is liable for damages approximately resulting from such negligence or delay; but the contract cannot be considered as remaining in force thereafter, so as to render him liable for further hire.

In Admiralty. Suit to recover for hire of scows and damages for their injury.

Albert A. Wray, for libelant.

James J. Macklin, for respondent.

THOMAS, District Judge. This action was brought against Augustin Walsh; but, it appearing that the cause of action, if any, was against Edward S. Walsh, he was brought in. The libelant seeks to recover a balance alleged to be unpaid upon the hiring of two scows, and for injury received by them while under such hire. The libelant claims that it was stipulated in the contract of hiring that upon the completion of the service, the scows should be returned to the libelant in their condition at the time of hiring. The respondent Edward S. Walsh admits that he was the party who hired the scows, but states that such stipulation was not a part of the contract. After several days of use, the scows, in tow with others, went to sea, were dumped at the mud buoy, and were returning in a choppy sea when the lines securing them parted, whereupon they went adrift and were later recovered in an injured condition by the libelant. There was a caretaker on each scow, and presumptively the lines were part of the outfit of the scows. The captain of the tugboat states, that "we wasn't pulling but very little on them at the time they parted." It is inferable that the owner of the scows knew that they were to be used for the purpose of going to sea and meeting expectable conditions of navigation. If the weather that prevailed at the time of the accident was not violent, if it was only such as should have been withstood by proper lines, then, in absence of neglectful handling of the tow, it would be a justifiable inference that his property was damaged from his failure to equip his scows with suitable towing lines. Even if the covenant claimed by the libelant were made, it should not be construed to include accidents happening on account of defects that existed in the equipment of the scows. Surely against such defects the respondent

could not covenant; but, if the lines were in good condition, as the evidence shows, why did they part? If they were equal to the strain of ordinary seas, they should have held. The scows were the last in the tow, and, if in such situation good lines parted, the weather must have been perilous, and, in the absence of preponderating evidence, it is improbable that the respondent increased his legal liability, so as to guaranty that he would return the scows in good condition, whatever perils of the sea might injure them. It is reasonable that a bailee might guaranty against his own or another's wrongful injury to vessels, or their improper use under unfavorable conditions of weather; but it is more difficult to conclude that he assured their safe return against the acts of God and the enemies of the republic. But such is the libelant's contention. There is no evidence of imprudent exposure to the elements, and with the presumption against, and the burden of proof upon, the libelant, it is concluded that the contract did not contain the covenant for which the libelant contends.

The remaining question relates to the duty of the respondent with reference to the boats after they had gone adrift. Was he justified upon the parting of the lines in abandoning the boats, and leaving the bailor to seek and find them, and recover them at his own cost, or should the bailee have used some diligence? This question was not the subject of contention in the form stated, but it was rather contended on the part of the libelant that the hiring still continued. Such contention should not be maintained. But, had it appeared that the bailee was guilty of some breach of duty in reporting the loss, whereby the owner was deprived of an opportunity of recovering his property, the respondent would be liable for any damages approximately resulting from such delay. The evidence does not satisfactorily disclose negligence on the part of the respondent in the regard mentioned. Therefore it is concluded that the libel must be dismissed, with costs.